# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| Honeywell International Inc. | |
| *Plaintiff,* | Case No. _____ |
| v. | |
| Patent Armory Inc., | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

## COMPLAINT

Plaintiff Honeywell International Inc. ("Honeywell") files this Complaint against Defendant Patent Armory Inc. and hereby alleges, on knowledge of its own actions and on information and belief as to all other matters, as follows:

## THE PARTIES

1.      Honeywell is a Delaware corporation with its principal place of business at 855 S. Mint Street, Charlotte, North Carolina 28202.

2.      Upon information and belief, Patent Armory Inc. ("Patent Armory") is a corporation organized and existing under the laws of Canada that maintains its principal place of business at 400-1565 Carling Ave., Ottawa, Ontario, Canada K1Z 8R1.

3.      Upon information and belief, Patent Armory is not, and at all time relevant to this Complaint, was not an "operating entity" as that term is used and defined in North Carolina's Abusive Patent Assertion Act ("APAA") in that, when "disregarding the selling and licensing of patents," Patent Armory is not primarily engaged in (1) "[r]esearch and technical or experimental

work to create, test, qualify, modify, or validate technologies or processes for commercialization of goods and services," (2) manufacturing, or (3) the provision of goods or commercial services. *See* N.C. Gen. Stat. § 75-142(5)(a)-(c).

4.    Upon information and belief, Patent Armory is not "an institution of higher education incorporated under the laws of and with its principal offices in North Carolina or (ii) a technology transfer organization owned by or affiliated with the institution of higher education." *See* N.C. Gen. Stat. § 75-143(c)(2).

5.    Upon information and belief, Patent Armory is not "a nonprofit research organization recognized as exempt from federal income tax under 26 U.S.C. § 501(c)(3) incorporated under the laws of and with its principal offices in North Carolina, or a technology transfer organization owned by or affiliated with the organization" or "an operating entity or its affiliate." *See* N.C. Gen. Stat. § 75-143(c)(3-4).

## INTRODUCTION

6.    This complaint arises from Patent Armory's unwarranted and unfounded allegations that Honeywell has infringed and continues to infringe United States Patent Nos. 10,237,420; 10,491,748; 7,269,253; 7,023,979; and 9,456,086 (the "Asserted Patents").

7.    Upon information and belief, Patent Armory has filed 189 lawsuits alleging infringement of one or more of the Asserted Patents.

8.    On April 2, 2025, Patent Armory sued Honeywell for patent infringement by filing a complaint (attached as Exhibit 1) in the United States District Court for the Eastern District of Texas (Case 2:25-cv-00327) (the "Texas Lawsuit").

9.    Patent Armory's complaint identified various "Exemplary Defendant Products" ("Accused Products"). Specifically, in claim charts attached to the complaint (attached as Exhibits

2-6), which identify Honeywell's Customer Service system and the CXone Solution offered by NICE.

10.     Patent Armory's complaint created a real and immediate controversy between Patent Armory and Honeywell as to whether Honeywell infringed and continues to infringe the Asserted Patents.

11.     Concurrently with the filing of this Complaint, Honeywell is filing a motion to dismiss the Texas Lawsuit because Patent Armory's complaint does not establish that the Eastern District of Texas does has personal jurisdiction over Honeywell or that venue is proper in the Eastern District of Texas in that dispute.

## SUBJECT MATTER JURISDICTION, PERSONAL JURISDICTION, AND VENUE

12.     This Court has subject matter jurisdiction over the claims alleged in this action under 28 U.S.C. §§ 1331, 1332, 1338, 2201, and 2202 because this Court has exclusive jurisdiction over declaratory judgment claims arising under the patent laws of the United States pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

13.     The Court also has original and exclusive subject matter jurisdiction over these claims because this Complaint arises under the Federal Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202). An actual case and controversy exists because Patent Armory has accused Honeywell of infringing the Asserted Patents via the Texas Lawsuit, which made clear Patent Armory's intention to assert its rights under the Asserted Patents by pursuing claims of infringement against Honeywell based on Honeywell's ongoing and/or planned activities and/or the activities accused of infringement in the Texas Lawsuit. As discussed below, Honeywell has not infringed the Asserted Patents and therefore has a right to engage in the complained-of activity, in that it involves an actual case or controversy due to Patent Armory's affirmative act of making

meritless accusations of alleged patent infringement by Honeywell in connection with Honeywell's ongoing business and Patent Armory's engaging in actual litigation against Honeywell in the Texas Lawsuit.

14.    The Court has supplemental jurisdiction over Honeywell's claim under North Carolina's Abusive Patent Assertion Act (N.C. Gen. Stat. §§ 75-140, et seq.) pursuant to 28 U.S.C. § 1367(a) because, as set forth below, the APAA claim is so related to the claim(s) over which the Court has original jurisdiction that the claims form part of the same case or controversy under Article III of the United States Constitution.

15.    This Court has personal jurisdiction over Patent Armory because Patent Armory has engaged in actions in this District that form the basis of Honeywell's claims against Patent Armory and that have created a real, live, immediate, and justiciable case or controversy between Honeywell and Patent Armory. Patent Armory's complaint in the Texas Lawsuit is specifically directed to Honeywell, a company headquartered at 855 S. Mint Street, Charlotte, North Carolina 28202.

16.    Upon information and belief, Patent Armory has filed 189 lawsuits alleging infringement of one or more of the Asserted Patents. Upon information and belief, Patent Armory has purposefully and repeatedly directed its activities at residents of North Carolina, including filing lawsuit against companies with facilities in North Carolina, including Citibank, Wells Fargo Bank, The American Automobile Association, Dick's Sporting Goods, Which Wich, Wingstop Restaurants, American Airlines, U-Haul International, and Dave & Buster's.

17.    Patent Armory's allegations of infringement were directed to North Carolina and North Carolina processes.

18.     As a result, Patent Armory established sufficient minimum contacts with the Western District of North Carolina such that Patent Armory is subject to general and specific personal jurisdiction in this Court. Further, the exercise of personal jurisdiction based on these highly-pertinent contacts with North Carolina does not offend traditional notions of fairness and substantial justice.

19.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400, because venue in declaratory judgment actions for noninfringement of patents is determined under the general venue statute, 28 U.S.C. § 1391.

20.     Pursuant to 28 U.S.C. § 1391(b)(1), venue is proper in any judicial district where a defendant resides. An entity with the capacity to sue and be sued, such as Patent Armory, is deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question under 28 U.S.C. § 1391(c).

21.     As discussed above, Patent Armory is subject to personal jurisdiction with respect to this action in the Western District of North Carolina, and thus, for the purposes of this action, Patent Armory resides in the Western District of North Carolina and venue is proper in accordance with 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

### I.     Background

22.     Upon information and belief, Patent Armory does not make, use, or sell any product or services of its own, but is solely involved in the business of patent licensing through litigation and the threat of litigation. Thus, Patent Armory is an entity commonly referred to as a "patent troll."

5

23.     On information and belief, Patent Armory's sole business model and activity involves sending letters accusing others of patent infringement, threatening litigation, and filing lawsuits.

24.     Patent Armory has filed approximately 189 lawsuits alleging infringement of one or more of the Asserted Patents (collectively, the "Patent Armory Serial Lawsuits").

25.     Upon information and belief, none of the numerous lawsuits involving Patent Armory's attempts to enforce the Asserted Patents have made it as far as claim construction. In fact, few defendants have answered the complaints filed by Patent Armory in such cases. The remaining cases appear to have been resolved prior to the answer filing deadline or soon after.

26.     Patent Armory also appears to systematically settle litigation prior to any potentially damaging rulings on the baselessness of Patent Armory's claims, thereby preserving its ability to extract license and settlement fees from other companies in the future.

27.     Upon information and belief, Patent Armory quickly and confidentially settles these suits to prevent future targets from learning of the baselessness of its claims.

**II.     Patent Armory's Demand to Honeywell**

28.     On April 2, 2025, Patent Armory filed the Texas Lawsuit against Honeywell.

29.     Shortly after the filing of the Texas Lawsuit, Honeywell reached out to Patent Armory regarding an extension to respond to the complaint. In response, and unprovoked by Honeywell, Patent Armory sent a demand to Honeywell in which it offered to settle the Texas Lawsuit for a payment of $95,000. Exhibit 14.

30.     Upon information and belief, Patent Armory made similar offers to substantially all of the other defendants in the Patent Armory Serial Lawsuits.

31.     Upon information and belief, Patent Armory knows that litigating the Texas Lawsuit as well as any of the Patent Armory Serial Lawsuits would cost substantially more than $95,000.

32.     Upon information and belief, Patent Armory's demand tactics, including the demand to Honeywell, are designed to extract payment from targets, knowing that the payment would be significantly less expensive than actually litigating against even a very questionable patent case.

### III.     The 420 Patent

33.     The 420 Patent is titled "Method and system for matching entities in an auction." Attached as Exhibit 2 is what Patent Armory purports to be a true and correct copy of the 420 Patent.

34.     The 420 Patent issued on March 19, 2019, from U.S. Patent Application Serial No. 15/856,729.

35.     The 420 Patent expired on or before March 5, 2024.

36.     Patent Armory alleges that it is the assignee of all right, title and interest in the 420 Patent including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the 420 Patent. *See* Exhibit 1 (Texas Lawsuit complaint) at ¶8.

37.     The claim chart attached to Patent Armory's complaint illustrates how Patent Armory believes that Honeywell infringes claim 20 of the 420 Patent (the "420 Patent Chart"). Exhibit 3 (420 Patent Chart). Patent Armory does not provide any evidence, argument, or other information to suggest that Honeywell infringes any other claim of the 420 Patent.

38.     Claim 20 reads as follows:

20. A method of processing requests, comprising:
estimating at least one content-specific or requestor-specific characteristic
    associated with each received request;
determining availability of a plurality of alternate target resources, each respective
    target resource having at least one respective target characteristic;
evaluating, with at least one automated processor, a plurality of alternate
    allocations of the respective received request with different available targets,
    according to a ranking dependent on a probabilistic predictive multivariate
    evaluator, based on the at least one content-specific or requestor-specific
    characteristic, and the respective target characteristics of the plurality of
    alternate target resources; and
generating a control signal, by the at least one automated processor, selectively
    dependent on the evaluating, to control the allocations of the respective
    received request with the different available targets.

39.    To infringe claim 20 of the 420 Patent (assuming claim 20 is valid, which Honeywell does not concede), Honeywell would need to perform a method that includes all of the above elements of claim 20.

40.    Honeywell does not infringe claim 20 (or any other valid claim of the 420 Patent) because Honeywell does not practice every limitation of the claims of the 420 Patent.

41.    Upon information and belief, Patent Armory failed to undergo a reasonable infringement analysis related to the 420 Patent prior to filing the Texas Lawsuit.

42.    Although Patent Armory included a claim chart with the filing of its complaint, the claim chart is wholly deficient and fails to show how Honeywell meets each element of claim 20 of the 420 Patent.

43.    During prosecution of the 420 Patent, the Examiner determined that the patent claims contained allowable subject matter based on the "claimed detailed limitations such as the use of 'content specific or requestor-specific characteristic associated with a request for evaluating to pair with different available partners' characteristic, comprising a probabilistic function. . ." Exhibit 4 (420 Patent prosecution history), p. 7.

44.     In the 420 Patent Chart, Patent Armory provides no explanation of at least how Honeywell performs a method that includes evaluating a plurality of alternate allocations of the respective received request with different available targets "according to a ranking dependent on a probabilistic predictive multivariate evaluator." Rather, the 420 Patent Chart merely states that Honeywell's system "uses the nature of the call and the availability and skill set of the agents to determine which possible allocation of the call to a given agent will have the best likelihood of a positive outcome for the caller." Exhibit 3, p. 10. There is no explanation of where a probabilistic predictive multivariate evaluator would ever be present in Honeywell's system. Patent Armory simply ignores this limitation. Thus Patent Armory's allegations of infringement fail on their face.

45.     In the complaint, Patent Armory alleges that Honeywell directly infringes claim 20 of the 420 Patent. Exhibit 1, ¶¶14-19; Exhibit 3. Patent Armory must thus show that Honeywell performs each step of the method in claim 20.

46.     The 420 Patent Chart, however, cites primarily evidence of purported infringement by citing documentation by NICE, not Honeywell. *See generally* Exhibit 3. For the following limitation of claim 20, Patent Armory cites evidence *solely* from NICE's website: "determining availability of a plurality of alternate target resources, each respective target resource having at least one respective target characteristic." Exhibit 3, pp.7-9.

47.     Not only is the evidence for this limitation taken solely from NICE's website, but the evidence cited by Patent Armory shows that the actions that would meet this limitation (if at all) are performed by NICE. Patent Armory says that determining which agent to handle a call (based on availability and skill) infringes this limitation. *Id.* at p.7. But the image below (from Patent Armory's own claim chart) shows that process is performed by NICE's CXone software.



Source: https://resources.nice.com/wp-content/uploads/2024/03/0002156-en-cxone-automatic-contact-distibutor-ds.pdf

*Id.* at p.9. That is, the evidence cited by Patent Armory itself says that NICE's "CXone intelligent routing engine matches customer request based on skills. . ." *Id.* Moreover, based on the evidence below (also from Patent Armory's own claim chart) the CXone platform is hosted on NICE's servers.



Source: https://resources.nice.com/wp-content/uploads/2024/03/0109215_en_elastic-call-queuing-for-cxone-datasheet.pdf

*Id.* at p.12.

    48.    Accordingly, the 420 Patent Chart provides no information to show how Honeywell would perform any action that would meet at least the "determining availability of a plurality of alternate target resources, each respective target resource having at least one respective target characteristic" limitation of the 420 Patent. Thus, based on Patent Armory's own allegations, Honeywell does not directly infringe the 420 Patent.

## IV.    The 748 Patent

49.    The 748 Patent is titled "Intelligent communication routing system and method." Attached as Exhibit 5 is what Patent Armory purports to be a true and correct copy of the 748 Patent.

50.    The 748 Patent issued on November 26, 2019, from U.S. Patent Application Serial No. 15/797,070.

51.    The 748 Patent will expire on or before May 24, 2027.

52.    Patent Armory alleges that it is the assignee of all right, title and interest in the 748 Patent including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the 748 Patent. *See* Exhibit 1 at ¶8.

53.    The claim chart attached to Patent Armory's complaint illustrates how Patent Armory believes that Honeywell infringes claim 11 of the 748 Patent (the "748 Patent Chart"). Exhibit 6. Patent Armory does not provide any evidence, argument, or other information to suggest that Honeywell infringes any other claim of the 748 Patent.

54.    Claim 11 reads as follows:

11. A method for assigning communications, comprising:
receiving a plurality of respective communications for association with a
    respective resource selected from a plurality of resources;
identifying a plurality of resources available for association with a respective
    communication and capable of handling the respective communication, each
    available resource having a limited quantitative capacity for association with
    multiple communications and an availability state;
calculating a respective score associated with each available resource dependent
    on the availability state of a respective available resource;
estimating an expected economic value to be obtained by associating each
    respective communication with each respective available resource, dependent
    on at least the score and a respective communication-content dependent value
    function of an outcome of a respective communication associated with a
    respective available resource; and
assigning each of the plurality of respective communications to one of the
    plurality of resources based on at least the estimated expected economic value

to be obtained by associating each respective communication with each respective resource.

55. Patent Armory alleges that Honeywell directly infringes and induces others to infringe the 748 Patent. Ex. 2, ¶¶21-25. Honeywell does not infringe the 748 Patent under either theory.

56. To infringe claim 11 of the 748 Patent (assuming claim 11 is valid, which Honeywell does not concede), Honeywell would need to perform a method that includes all of the above elements of claim 11 or induce others to directly infringe the method of claim 11.

57. Honeywell does not infringe claim 11 (or any other valid claim of the 748 Patent) or induce others to infringe claim 11 (or any other valid claim of the 748 Patent) because Honeywell does not practice every limitation of the claims of the 748 Patent and does not induce any another person to directly infringe.

58. Upon information and belief, Patent Armory failed to undergo a reasonable infringement analysis related to the 748 Patent prior to filing the Texas Lawsuit.

59. Although Patent Armory included a claim chart with the filing of its complaint, the claim chart is wholly deficient and fails to show how Honeywell meets each element of claim 11 of the 748 Patent. The claim chart also does not contain any suggestion as to how Honeywell induces others to infringe the 748 Patent.

60. The 758 Patent Chart cites primarily evidence of purported infringement by citing documentation by NICE, not Honeywell. *See generally* Exhibit 6.

61. In the 748 Patent Chart, Patent Armory's explanation of how Honeywell performs a method that includes "estimating an expected economic value to be obtained by associating each respective communication with each respective available resource" is wholly deficient. Not only does Patent Armory not point to any evidence for an "economic value," but it does not even address

that limitation in its infringement "analysis." Patent Armory merely states that for a given call, the Honeywell Customer Service system determines, from the group of available agents, an appropriate agent for handling the call. . ." Ex. 6, p.20. Patent Armory points to no value, let alone an economic value.

## V.     The 253 Patent

62.     The 253 Patent is titled "Telephony control system with intelligent call routing." Attached as Exhibit 7 is what Patent Armory purports to be a true and correct copy of the 253 Patent.

63.     The 253 Patent issued on September 11, 2007, from U.S. Patent Application Serial No. 11/387,305.

64.     According to the United States Patent Office website, the 253 Patent expired on October 14, 2019, because the patent holder failed to pay maintenance fees. https://patentcenter.uspto.gov/applications/11387305?application=

65.     Patent Armory alleges that it is the assignee of all right, title and interest in the 253 Patent including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the 253 Patent. *See* Exhibit 1, ¶8.

66.     The claim chart attached to Patent Armory's complaint illustrates how Patent Armory believes that Honeywell infringes claim 10 of the 253 Patent (the "253 Patent Chart"). Exhibit 8. Patent Armory does not provide any evidence, argument, or other information to suggest that Honeywell infringes any other claim of the 253 Patent.

67.     Claim 10 reads as follows:

10. A communications method comprising:
        (a) receiving a plurality of communications, each having associated classification information;

(b) storing information representing characteristics of at least three potential targets; and

 (c) determining, in a combinatorial optimization, an optimum target for each communication based on the communication classification, and target characteristics.

68.    To infringe claim 10 of the 253 Patent (assuming claim 10 is valid, which Honeywell does not concede), Honeywell would need to perform a method that includes all of the above elements of claim 10.

69.    Honeywell does not infringe claim 10 (or any other valid claim of the 253 Patent) because Honeywell does not practice every limitation of the claims of the 253 Patent.

70.    Upon information and belief, Patent Armory failed to undergo a reasonable infringement analysis related to the 253 Patent prior to filing the Texas Lawsuit.

71.    Although Patent Armory included a claim chart with the filing of its complaint, the claim chart is wholly deficient and fails to show how Honeywell meets each element of claim 10 of the 253 Patent.

72.    The 253 Patent expired on October 14, 2019.

73.    However, the 253 Patent Chart cites a substantial amount of evidence from after 2019. For example, the 253 Patent Chart cites the following evidence all of which the URLs provided by Patent Armory suggest are from 2023 or 2024:



**INTELLIGENT, DATA-DRIVEN ROUTING FOR DIGITAL AND VOICE INTERACTIONS**

CXone Automatic Contact Distributor helps you to increase customer satisfaction by enabling your agents to personalize digital and voice interactions and reducing agent effort. You now can empower all agents to engage in smart digital conversations, meeting your customers where they are looking for you—across dozens of digital messaging channels or traditional voice, email and chat. Skills and proficiency levels, AI-powered behavioral profiles and analytics-based routing using Natural Language Processing (NLP) enable you to further optimize quickly finding the best agent match to handle any interaction.

Seamlessly integrated self-service options including AI bots and Voice Portal (IVR) functionality increase productivity, and enable bots to take on routine interactions, so that your agents can focus on higher value, more complex interactions. CXone Automatic Contact Distributor together with a visual contact flow design accelerate changes to digital, voice and AI routing flows—you can make changes in minutes or hours, not weeks or even months.

Source: https://resources.nice.com/wp-content/uploads/2024/03/0002156-en-cxone-automatic-contact-distibutor-ds.pdf



Source: https://resources.nice.com/wp-content/uploads/2024/03/0109215_en_elastic-call-queuing-for-cxone-datasheet.pdf

**CONNECT CUSTOMERS TO THE RIGHT AGENT**

The CXone intelligent routing engine matches customer requests based on skills, natural language analytics, and AI-powered behavioral profiles. It consolidates routing across inbound and outbound, digital and voice, agent assisted and self-service channels. The ACD ensures every interaction is routed to the best available agent in the least amount of time. You can use customer data and sentiment, predictive behavioral routing, advanced skills-based and data-directed omnichannel routing with a universal queue for inbound and outbound voice as well as digital channels. Cases, paper mail or even fax can be routed using the Work Item channel, if needed.

Source: https://resources.nice.com/wp-content/uploads/2024/03/0002156-en-cxone-automatic-contact-distibutor-ds.pdf



CONNECT CUSTOMERS TO THE RIGHT RESOURCE
Use your CRM data to identify customers and route them to best-suited resource.

Increase customer satisfaction by ensuring each contact is handled by the best-qualified resource.
Improve average handle time and first call resolution by reducing the number of transfers, consultations and follow-up calls.
Increase agent satisfaction by ensuring agents receive contacts they can handle successfully.

Source: https://resources.nice.com/wp-content/uploads/2024/08/0000716-en-CXone-CRM-Integrations-DS.pdf

Exhibit 8, pp.8-13, 15.

74.     Evidence cited from 2023 and 2024 cannot be used to show infringement of a patent that expired in 2019. Thus the 253 Patent Chart fails to provide even basic allegations to show how Honeywell could infringe the 253 Patent.

75.     In the complaint, Patent Armory alleges that Honeywell directly infringes claim 10 of the 253 Patent. Patent Armory must thus show that Honeywell performs each step of the method in claim 10.

76.     The 253 Patent Chart, however, cites primarily evidence of purported infringement by citing documentation by NICE, not Honeywell. *See generally* Exhibit 8. For the following limitation of claim 10, Patent Armory cites evidence *solely* from NICE's website: "storing information representing characteristics of at least three potential targets." *See id.* at pp.10-13.

77.     Not only is the evidence for this limitation taken solely from NICE's website, but the evidence cited by Patent Armory shows that the actions that would meet this limitation (if at all) are performed by NICE. Patent Armory alleges that the action that meets this limitation is storing information regarding the skill set of agents who could take a call. *Id.* at p.10. But the

image below (from Patent Armory's own claim chart) shows that process is performed by NICE's CXone software.



Source: https://resources.nice.com/wp-content/uploads/2024/03/0002156-en-cxone-automatic-contact-distibutor-ds.pdf

*Id.* at pp.11-12. That is, the evidence cited by Patent Armory's own claim chart says that NICE's "CXone intelligent routing engine matches customer request based on skills. . ." *Id.* Moreover, based on the evidence below (also from Patent Armory's own claim chart) the CXone platform is hosted on NICE's servers in NICE's "CXone Platform Media Servers".



Source: https://resources.nice.com/wp-content/uploads/2024/03/0109215_en_elastic-call-queuing-for-cxone-datasheet.pdf

*Id.*

78.    Similarly, the 253 Patent Chart cites *solely* evidence from NICE for the "determining, in a combinatorial optimization, an optimum target for each communication based on the communication classification, and target characteristics" limitation of claim 10 of the 253 Patent. *See id.* at pp.13-17.

79.     Not only is the evidence for this limitation taken solely from NICE's website, but Patent Armory's own statement in the 253 Patent Chart illustrates that even it believes this limitation is practiced by NICE, not Honeywell: "The system determines the potential agent based on the communication classification and performs automated skill-based routing of calls using Nice Cxone Platform Service Cloud (i.e., a combinatorial optimization)." *Id.* at p.13.

80.     Accordingly, the 253 Patent Chart provides no information to show how Honeywell would perform any action that would meet at least the "storing information representing characteristics of at least three potential targets" and "determining, in a combinatorial optimization, an optimum target for each communication based on the communication classification, and target characteristics" limitations of the 253 Patent. Rather, Patent Armory's own documentation shows that it believes a different company, NICE, not Honeywell is responsible for the software that practices the limitations of the 253 Patent. Thus, based on Patent Armory's own allegations, Honeywell does not directly infringe the 253 Patent.

## VI.     The 979 Patent

81.     The 979 Patent is titled "Telephony control system with intelligent call routing." Attached as Exhibit 9 is what Patent Armory purports to be a true and correct copy of the 979 Patent.

82.     The 979 Patent issued on April 4, 2006, from U.S. Patent Application Serial No. 10/385,389.

83.     The 979 Patent expired on or before November 13, 2023.

84.     Patent Armory alleges that it is the assignee of all right, title and interest in the 979 Patent including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the 979 Patent. *See* Exhibit 1 at ¶8.

85.    The claim chart attached to Patent Armory's complaint illustrates how Patent Armory believes that Honeywell infringes claim 10 of the 979 Patent (the "979 Patent Chart"). Exhibit 10. Patent Armory does not provide any evidence, argument, or other information to suggest that Honeywell infringes any other claim of the 979 Patent.

86.    Claim 10 reads as follows:

10. A communications method comprising:
        (a) receiving a plurality of communications, each having associated classification information;
        (b) storing information representing characteristics of a plurality of potential targets;
        (c) determining an optimum target for each communication based on the communication classification and target characteristics using a multivariate cost function comparing at least three potential targets; and
        (d) routing the communication to the optimum target,
said determining step and said routing step being performed within a common operating environment.

87.    To infringe claim 10 of the 979 Patent (assuming claim 10 is valid, which Honeywell does not concede), Honeywell would need to perform a method that includes all of the above elements of claim 10 (or as discussed below induce another to perform the method of claim 10).

88.    Honeywell does not infringe claim 10 (or any other valid claim of the 979 Patent) nor does Honeywell induce infringement of claim 10 (or any other valid claim of the 979 Patent) because Honeywell does not practice every limitation of the claims of the 979 Patent and does not induce others to infringe the 979 Patent.

89.    Upon information and belief, Patent Armory failed to undergo a reasonable infringement analysis related to the 979 Patent prior to filing the Texas Lawsuit.

90.     Although Patent Armory included a claim chart with the filing of its complaint, the claim chart is wholly deficient and fails to show how Honeywell meets each element of claim 10 of the 979 Patent.

91.     The 979 Patent expired on or before November 13, 2023.

92.     The 979 Patent Chart cites a substantial amount of evidence from after 2023. For example, the 979 Patent Chart cites the following evidence, all of which the URLs provided by Patent Armory suggest are from 2024:



Source: https://resources.nice.com/wp-content/uploads/2024/03/0109215_en_elastic-call-queuing-for-cxone-datasheet.pdf



Source: https://resources.nice.com/wp-content/uploads/2024/03/0002156-en-cxone-automatic-contact-distibutor-ds.pdf



Source: https://resources.nice.com/wp-content/uploads/2024/03/0002156-en-cxone-automatic-contact-distibutor-ds.pdf

Source: https://resources.nice.com/wp-content/uploads/2024/08/0000716-en-CXone-CRM-Integrations-DS.pdf

Exhibit 10, pp.6-7, 9-10, 13, 16-17, 19, 21-22, 24-25.

93. Evidence from 2024 cannot be used to show infringement of a patent that expired in 2023. Thus the 979 Patent Chart fails to provide sufficient information to show how Honeywell could infringe the 979 Patent.

94. In the complaint, Patent Armory alleges that Honeywell "has been and continues to" directly infringes claims 10 and 11 of the 979 Patent. Exhibit 2, ¶37; Exhibit 10. To show that Honeywell directly infringes these claims, Patent Armory would need to show that Honeywell meets each limitation of those claims. As an initial matter, the 979 Patent is expired and thus

Honeywell cannot be "continu[ing] to" infringe an expired patent. Thus, Patent Armory's request to the court for a judgment directed to Honeywell's "continuing or future infringement" for the 979 Patent is in bad faith.

95. Patent Armory further alleges that Honeywell induces infringement of claims 10 and 11 of the 979 Patent. Exhibit 1, ¶40. Induced infringement requires knowledge of the infringement on the part of Honeywell. Patent Armory only alleges that Honeywell had knowledge of infringement as of the service of its complaint (April 2025). *Id.* at ¶38. But the 979 Patent expired in 2023. Thus Honeywell could not possibly be inducing infringement of a patent that expired in 2023 when Patent Armory's own complaint states that Honeywell didn't have knowledge of the alleged infringement until 2025. Moreover, the claim chart provides no evidence or information suggesting how Honeywell induces others to infringe the claims of the 979 Patent.

96. Although alleging that Honeywell directly infringes or induces infringement of the 979 Patent, Patent Armory's 979 Patent Chart instead cites primarily evidence of purported infringement by citing documentation by NICE, not Honeywell. *See generally* Exhibit 10. For all but the first limitation of claim 10, Patent Armory cites only NICE evidence of alleged infringement. *Id.* Moreover, for claim 11, Patent Armory cites all NICE evidence of alleged infringement. *Id.* at pp.22-27.

97. Not only is substantially all of the evidence for the infringement allegations regarding the 979 Patent taken solely from NICE's website, but the evidence cited by Patent Armory shows that the actions that would meet the claims cited by Patent Armory are performed by NICE.

98. By way of example, the last limitation of claim 10 requires that "said determining step and said routing step being performed within a common operating environment." Exhibit 10,

p.20. The evidence cited by Patent Armory is that the NICE CXone runs on Amazon Web Services. *Id.* at pp.20-22. There is no explanation of how Honeywell directly meets this limitation or induces others to meet this limitation.

## VII.    The 086 Patent

99.    The 086 Patent is titled "Intelligent communication routing system and method." Attached as Exhibit 11 is what Patent Armory purports to be a true and correct copy of the 086 Patent.

100.    The 086 Patent issued on September 27, 2016, from U.S. Patent Application Serial No. 12/719,827.

101.    The 086 Patent will expire on or before August 26, 2027.

102.    Patent Armory alleges that it is the assignee of all right, title and interest in the 086 Patent including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the 086 Patent. *See* Exhibit 1, ¶8.

103.    The claim chart attached to Patent Armory's complaint illustrates how Patent Armory believes that Honeywell infringes claims 11 and 18 of the 086 Patent (the "086 Patent Chart"). Exhibit 12. Patent Armory does not provide any evidence, argument, or other information to suggest that Honeywell infringes any other claim of the 086 Patent.

104.    Claims 11 and 18 read as follows:

11. A method for matching a first entity with a second entity, comprising:
        storing a plurality of multivalued scalar data representing inferential targeting parameters for the first entity;
        storing a plurality of multivalued scalar data of each of the plurality of second entities, representing inferential targeting parameters for a plurality of second entities;
        performing using an automated processor, based on at least the stored plurality of multivalue scalar data, an economic optimization seeking to maximize a normalized economic surplus of a respective mutually exclusive

23

match of the first entity with the second entity, in conjunction with an opportunity cost of the unavailability of the second entity as a result of the match; and

outputting a signal in dependence on the optimization.

18. The method according to claim 11, wherein signal comprises at least one message passed through a message queue of a computer operating system, which is communicated to a communication router operating under the operating system for control over a routing of a communication.

105. Patent Armory alleges that Honeywell directly infringes and induces others to infringe the 086 Patent. Exhibit 1, ¶¶21-25. Honeywell does not infringe under either theory.

106. To infringe claims 11 and 18 of the 086 Patent (assuming those claims are valid, which Honeywell does not concede), Honeywell would need to perform a method that includes all of the above elements of claims 11 and 18 or induce others to directly infringe the method of claims 11 and 18.

107. Honeywell does not infringe claims 11 and 18 (or any other valid claim of the 086 Patent) or induce others to infringe claims 11 and 18 (or any other valid claim of the 086 Patent) because Honeywell does not practice every limitation of the claims of the 086 Patent and does not induce any other to directly infringe.

108. During prosecution of the 086 Patent, the patent holder stated to the United States Patent Office that "applicants' system computes an 'opportunity' cost which necessarily compares alternate possible outcomes. . . [the prior art] on the other hand, compare[s] various available (or soon to be available) agents for each respective call within a call queue, but not a more global allocation of agents with respect to the set of present and predicted calls during the period of predicted unavailability in order to determine an opportunity cost." Exhibit 13, p.11. That is, the patent owner distinguished prior art in which a system compared availability of agents from the claims of the 086 Patent because the prior art did not also do "a more global allocation of agents

with respect to the set of present and predicted calls during the period of predicted unavailability in order to determine an opportunity cost." *Id.*

109.    However, in the 086 Patent Chart, for the limitation that includes a requirement of an "opportunity cost" Patent Armory says nothing about a "global allocation of agents" and instead recites that Honeywell allegedly does a cost-benefit analysis that "also accounts for the fact that the agent cannot handle other calls while handing this call." *Id.* at p.13. But that is the same subject matter that Patent Armory said was in the prior art and did not meet the limitation of "opportunity cost."

110.    A substantial amount of the evidence cited by Patent Armory as allegedly showing Honeywell's infringement of the 086 Patent is from NICE's website, not Honeywell's. *See generally* Exhibit 12.

111.    Patent Armory's allegations include no information on how Honeywell allegedly induces others to infringe the 086 Patent.

## Count 1
## Declaration of Non-Infringement

112.    Honeywell incorporates, by reference, the allegations contained in the preceding as if set forth herein.

113.    Honeywell has not infringed and does not infringe any valid and enforceable claim of the Asserted Patents, whether literally or under the doctrine of equivalents.

114.    Additionally, Honeywell is not liable for any induced, contributory, divided, or other indirect infringement of any valid enforceable claim of the Asserted Patents.

115.    There exists a substantial, real and immediate controversy between Honeywell and Patent Armory concerning Honeywell alleged infringement of the Asserted Patents, which Honeywell denies, and this controversy warrants the issuance of a declaratory judgment.

116. Honeywell does not infringe at least claim 20 of the 420 Patent because, *inter alia*, the accused system does not "estimat[e] at least one content-specific or requestor-specific characteristic associated with a request," "determin[e] a set of available partners, each having at least one respective partner characteristic," "evaluat[e], with at least one automated processor, a plurality of pairings of the request with a plurality of different available partners, according to an evaluator for valuing pairings of the request with respective available partners, comprising at least one of a probabilistic function, a hierarchical Markov model, Bayesian logic, and a neural network, dependent on the at least one content-specific or requestor specific characteristic, and the at least one respective partner characteristic," and/or "generat[e] a control signal, by the at least one automated processor, selectively dependent on the evaluating."

117. Honeywell does not infringe at least claim 11 of the 748 Patent because, *inter alia*, the accused system does not "receiv[e] a plurality of respective communications for association with a respective resource selected from a plurality of resources," "identify[] a plurality of resources available for association with a respective communication and capable of handling the respective communication, each available resource having a limited quantitative capacity for association with multiple communications and an availability state," "calculate[e] a respective score associated with each available resource dependent on the availability state of a respective available resource," "estimat[e] an expected economic value to be obtained by associating each respective communication with each respective available resource, dependent on at least the score and a respective communication-content dependent value function 10 of an outcome of a respective communication associated with a respective available resource," and/or "assign[] each of the plurality of respective communications to one of the plurality of resources based on at least

the estimated expected economic value to be obtained by associating each respective communication with each respective resource."

118.     Honeywell does not infringe at least claim 10 of the 979 Patent because, *inter alia*, the accused system does not comprise "an input for receiving call classification information," "a data structure representing agent characteristics," and/or "a processor, for (a) determining, with respect to the received call classification information, an optimum agent for association with a call corresponding to call classification information, based on a multivariate cost function comparing at least three agents, the selection being based on at least a correspondence of said call classification and said data structure of agent characteristics, and (b) controlling a call routing of the call in dependence on the determination, said determining and routing functions of said processor being performed within the common operating environment." Honeywell also does not infringe at least claim 11 of the 086 Patent because, *inter alia*, claim 11 depends from claim 10.

119.     Honeywell does not infringe at least claim 10 of the 253 Patent because, *inter alia*, the accused system does not "receiv[e] a plurality of communications, each having associated classification information," "stor[e] information representing characteristics of at least three potential targets," and/or "determining, in a combinatorial optimization, an optimum target for each communication based on the communication classification, and target characteristics."

120.     Honeywell does not infringe at least claim 11 of the 086 Patent because, *inter alia*, the accused system does not "stor[e] a plurality of multivalued scalar data representing inferential targeting parameters for the first entity," "stor[e] a plurality of multivalued scalar data of each of the plurality of second entities, representing inferential targeting parameters 11 for a plurality of second entities," "perform[] using an automated processor, based on at least the stored plurality of multivalue scalar data, an economic optimization seeking to maximize a normalized economic

surplus of a respective mutually exclusive match of the first entity with the second entity, in conjunction with an opportunity cost of the unavailability of the second entity as a result of the match," and/or "output[] a signal in dependence on the optimization." Honeywell also does not infringe at least claim 18 of the 086 Patent because, *inter alia*, claim 18 depends from claim 11.

121.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., Honeywell requests a declaration by the Court that Honeywell has not infringed and does not infringe any claim of the Asserted Patents under any theory (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)).

**Count II**
**Violation of North Carolina Abusive Patent Assertion Act**
(*N.C. Gen. Stat. §§ 75-140,* et seq.)

122.     Honeywell incorporates, by reference, the allegations contained in the preceding as if set forth herein.

123.     Patent Armory's assertion of Honeywell's patent infringement in the Texas Lawsuit is abusive and made in bad faith. The complaint and claim charts filed in the Texas Lawsuit fail to include information necessary to evaluate the infringement claims such as factual allegations concerning the specific areas in which Honeywell's products, services, and technology infringe the Asserted Patents. *See* N.C. Gen. Stat. § 75-143(a)(1).

124.     Upon information and belief, prior to filing the Texas Lawsuit, Patent Armory failed to conduct an analysis comparing the claims in the Asserted Patents to Honeywell's products, services, and technology, or, if the analysis was done, the Texas Lawsuit fails to identify the specific areas in which the products, services, and technology of Honeywell are covered by the claims in Asserted Patents. *See id.* § 75-143(a)(2).

125.     Shortly after filing the Texas Lawsuit, Patent Armory sent an email to in-house counsel at Honeywell and offered to settle the lawsuit for $95,000. Exhibit 14. At the time the offer was made, Honeywell only had 5 days to respond to the complaint (although Patent Armory indicated in the demand it was amenable to an extension, which was ultimately filed). Honeywell would either have to choose to pay Patent Armory's demand or begin expending resources litigating with Patent Armory. Thus, by filing the Texas Lawsuit and serving the complaint, thereby starting Honeywell's deadline to respond, Patent Armory demanded payment and response within an unreasonably short period of time. *See id.* § 75-143(a)(4).

126.     The $95,000 settlement demand from Patent Armory is based, upon information and belief, not on a reasonable estimate of the value of a license/settlement, but instead on the cost of defending an actual lawsuit. *See id.* § 75-143(a)(5).

127.     Patent Armory previously filed (and continues to file), and upon information and belief has threatened to file, one or more lawsuits based on the same or similar claim of patent infringement in the form of the Patent Armory Serial Lawsuits. Upon information and belief, the Patent Armory Serial Lawsuits also fail to contain factual allegations concerning the specific areas in which the defendants' products, services, and technology infringe the Asserted Patents. *See* N.C. Gen. Stat. § 75-143(a)(8).

128.     A court may consider any other factor that is deemed relevant. *See* N.C. Gen. Stat. § 75-143(a)(12). Here, the court should consider at least the following additional factors of bad faith on the part of Patent Armory:

- Patent Armory seeks damages for Honeywell's alleged ongoing infringement of patents that are expired.

- Patent Armory alleges that Honeywell has induced infringement of certain of the Asserted Patents that are expired, but only alleges knowledge of the alleged infringement as of the date of the Complaint (April 2025), years after the patent expired.

- To demonstrate that Honeywell allegedly infringes certain patents, Patent Armory cites documentation with dates after the date the patent expired.

- Although Patent Armory alleges that Honeywell infringes each of the Asserted Patents, it primarily cites evidence from a third party, NICE, when attempting to show how Honeywell infringes the patents. For certain Asserted Patents and certain limitations of those patents, Patent Armory *only* cites documentation from NICE and does not point to any action on the part of Honeywell.

129.    As a result of Patent Armory's bad faith and abusive assertion of Honeywell's infringement of the Asserted Patents, Honeywell has suffered damages and incurred costs, fees, and expenses in investigating and defending against the bad faith claim of infringement, and other harm, all of which are recoverable under the North Carolina Abusive Patent Assertion Act. *See* N.C. Gen. Stat. §§ 75-145(b)(1)-(3).

130.    Honeywell, therefore, seeks recovery of its damages in an amount to proven at trial and together with an award of exemplary damages in an amount equal to $50,000 or three (3) times the total of damages, costs, and fees, whichever is greater. *See id.* § 75-145(b)(4).

## **PRAYER FOR RELIEF**

WHEREFORE, Honeywell prays for the entry of a judgment from this Court in its favor and against Patent Armory and respectfully requests the following relief:

A.  A declaration that Honeywell has not infringed and does not infringe,

directly or indirectly, any valid and enforceable claim of the 420 Patent, whether literally or under the doctrine of equivalents;

B.  A declaration that Honeywell has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the 748 Patent, whether literally or under the doctrine of equivalents;

C.  A declaration that Honeywell has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the 253 Patent, whether literally or under the doctrine of equivalents;

D.  A declaration that Honeywell has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the 979 Patent, whether literally or under the doctrine of equivalents;

E.  A declaration that Honeywell has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the 086 Patent, whether literally or under the doctrine of equivalents;

F.  An order declaring that this is an exceptional case and awarding Honeywell its costs, expenses, disbursements, and reasonable attorney's fees under 35 U.S.C. § 285;

G.  An order declaring Patent Armory's conduct as unlawful, unfair, and deceptive trade practices;

H.  An order awarding Honeywell all damages, costs, expenses, and fees (including reasonable attorneys' fees) incurred by Honeywell as a result of, and caused by, Patent Armory's unlawful acts, including exemplary

damages as contemplated by the North Carolina Abusive Patent Assertion Act, together with all pre- and post-judgment interest, as provided by law; and

I. All such other and further relief, both at law and in equity, which this Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Honeywell requests a trial by jury on any issues so triable by right.

Dated: June 5, 2025                    Respectfully submitted

                                       /s/ Adam J. Doane
                                       Adam J. Doane
                                       HONEYWELL INTERNATIONAL INC.
                                       855 S. Mint Street
                                       Charlotte, NC  28202
                                       Telephone: 980.201.0375
                                       Adam.doane@honeywell.com
                                       NC Bar No. 52495

                                       *Counsel for Plaintiff*
                                       *Honeywell International Inc.*